N. Y. 86, in the course of the opinion delivered by Porter, J., he adds his approval to the language of Judge Story, where he says:

"No doctrine is better settled, both upon principle and authority, than this: that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with a full knowledge of all the material facts."

The case in hand is quite distinguishable from Henry v. Allen, 77 Hun, 49, 28 N. Y. Supp. 242.

It seems quite manifest that when Judson took from the firm funds wrongfully, and concealed the fact by wrong entries on his books, and appropriated the funds to his own use, either by directly paying out the same, or depositing them in a bank to his own credit, he was not engaged, in any sense, in the business of his wife, or acting within the scope of any agency which she had created in her individual capacity, as contradistinguished from her relation as a member of the firm. When he thus took possession of the funds of the firm, and diverted them from the firm's use and ownership, he was acting in the service of the firm. The principal question involved has been very fully and very clearly discussed by the learned referee, and numerous cases cited, in the opinion which he delivered; and the views already expressed, as well as those stated by the learned referee, lead to the conclusion that upon the essential proposition the conclusion reached by the referee should be sustained. Judgment affirmed, with costs. All concur.

---

### GOETZE. et al. v. DUNPHY.

(Supreme Court, General Term, First Department. November 16, 1894.)

CUSTOM AND USAGE—WHEN ADMISSIBLE TO AFFECT CONTRACT.
    A guaranty, in a sale of skins, that they shall not "lose over six per cent. from invoice weight," is explicit, and cannot be affected by proof of a custom to construe such guaranties to mean that the seller will make a deduction from the price if the loss of weight exceeds the amount specified, and that the buyer shall not reject the skins because of such loss of weight.

Appeal from special term, New York county.

Action by Herman Goetze and others against John Dunphy to recover damages for defendant's refusal to receive certain calfskins sold by plaintiffs to defendant. A motion to amend the complaint was denied, and plaintiffs appeal. Affirmed.

The contracts of sale were as follows:

New York, April 15, 1884.

Sold for account Mess. Gotze & Popert, Hamburg, to John Dunphy, Esq., about 1,200 wet salted Danish calfskins, to weigh per invoice not less than 6 pounds, German (3 kos.), or more than 10 pounds, German (5 kos.), each. May shipment, at 15c. per lb., nett cash, delivered New York. Skins guarantied not to lose over 6 per cent. from invoice weight.

Pickard & Andresen, Brokers.

New York, April 22, 1884.

Sold for account Mess. Gotze & Popert, Hamburg, to John Dunphy, Esq., about 2,400 wet salted Danish calfskins, no skin to weigh less than 13

pounds, German, or more than 20 pounds, German, or an average, as per invoice, of about 16 pounds, German, at 14¼c. per pound English, nett cash; cost, freight, and insurance payable 30 days from delivery. Skins to contain about 50 per cent. without heads, 50 per cent. small heads, and one-third small shanks, and guarantied not to lose over six per cent. from invoice weight.                                        Pickard & Andresen, Brokers (Gordon).

New York, May 8, 1884.

Sold for account Mess. Gotze & Popert, Hamburg, to John Dunphy, Esq., 3,250 to 3,500 wet salted Holstein calfskins, no skin to weigh less than 6 pounds, German, or more than 10 pounds, German, and containing about one-third wet salted Hanoverian calfskins, weighing from 7 to 8 pounds, German; shipment about 1st half June, at 13⅞c. per pound, English, nett; cost, freight, and insurance payable 30 days from delivery. To be of the usual good quality, and guarantied not to lose 6 per cent. from invoice weight.

Pickard & Andresen, Brokers.

The proposed amendment was by inserting in the complaint the following paragraph:

That it is the usage and custom of the trade, under contracts for the purchase and sale of skins containing provisions of guaranty against loss from invoice weight like those contained in the three contracts before mentioned, to accept delivery of skins the loss of the weight of which from invoice weight exceeds the guarantied percentage of loss, and to make and accept a deduction from the contract price as an allowance for such excess of loss of weight, and that such usage and custom is established, not casual; uniform, not varying; general, not personal,—and was known to and contemplated by both the parties to said contracts at the times of making thereof.

The opinion of Mr. Justice LAWRENCE at special term on denying the motion to amend is as follows:

This action is brought to recover damages for the failure to receive certain skins tendered to the defendant under the certain contracts for the sale thereof, in which there was a clause by which the skins were guarantied not to lose more than 6 per cent. from their invoice weight. On the first trial of the action there was a verdict rendered in favor of the plaintiff, and upon appeal the judgment was reversed, and a new trial ordered. The new trial was ordered in the month of November, 1888, and the case was not brought to trial until the month of January, 1894, and upon said second trial an attempt was made to introduce evidence of custom with reference to the guaranty contained in each contract that the skins should not lose over 6 per cent. from their invoice weight. This evidence was excluded. A juror was thereupon withdrawn, with the consent of the court, in order that this motion might be made at special term, and the application comes from the court on those facts. I am of the opinion that the motion should be denied. The provisions of the guaranty in each of the three contracts under which the skins were sold are clear and explicit, to wit, that the skins are guarantied not to lose over 6 per cent. from invoice weight. There is certainly no ambiguity in this language, and the rule is too well settled that usage and custom cannot be proved to contravene a rule of law or to alter or contradict the express or implicit terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties to contract other than they are by the terms thereof. Hopper v. Sage, 112 N. Y. 530, 20 N. E. 350; Markham v. Jaudon, 41 N. Y. 236; Bradley v. Wheeler, 44 N. Y. 495; Baker v. Drake, 66 N. Y. 518. In this particular case the usage or custom of the trade which is sought to be pleaded is an allowance for any excess of loss of weight over and above 6 per cent. from the invoice weight. Such a usage or custom would be entirely in conflict with the plain terms of the guaranty, and it therefore results that the motion must be denied on that ground, with costs.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

Evarts, Choate & Beaman, for appellants.
Hobbs & Gifford, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of court below.

---

(82 Hun, 153.)

### ROWE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, General Term, Fourth Department. December 7, 1894.)

1. CONTRIBUTORY NEGLIGENCE—PRESUMPTION.
 It will be presumed that plaintiff was free from contributory negligence where none is shown.

2. APPEAL—WEIGHT OF EVIDENCE.
 The general term of the supreme court will not disturb a verdict as excessive unless the amount is so great as to indicate that the jury were influenced by passion or prejudice.

Appeal from circuit court, Oswego county.

Action by William Rowe against the New York Central & Hudson River Railroad Company for personal injuries. From a judgment entered on the verdict for plaintiff for $1,800, and from an order denying a new trial on the minutes, defendant appeals. Affirmed.

The Rome, Watertown & Ogdensburg Railroad Company (owned and occupied by the defendant) crosses at right angles and grade the Ontario & Western Railroad at Central Square, Oswego county. A signal is erected for the use of both roads to denote when the crossing is clear. It was the custom of either road, on approaching the crossing, to stop at a distance of some 800 feet from the crossing at a post, and whistle for a signal, and wait until it received a signal from the operator denoting that the road was clear. About 10 o'clock at night of the 2d of September, 1892, the plaintiff took his seat in the smoking car of the Ontario & Western Railroad, and the train, when it reached the grade crossing at Central Square, stopped, and called for a signal, and, upon receiving a signal denoting that the road was clear, proceeded to cross, and, while the smoking car in which the plaintiff was seated was standing at the crossing, an engine drawing a freight train of cars for the defendant approached without stopping or waiting for a signal from the operator, and ran into and collided with the smoking car in which the plaintiff was a passenger, causing the injuries complained of, at about 12 o'clock at night. Extensive evidence on either side was given as to the nature and extent and character of the injuries claimed to have been sustained by the plaintiff, and the appellant claims the verdict is excessive, and ought not to have exceeded in any event the sum of $500.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

C. D. Prescott, for appellant.
Timothy Curtin, for respondent.

HARDIN, P. J. Chapter 565, art. 2, § 36, of the Laws of 1890, provides that "all trains and locomotives on railroads crossing each other at grade shall come to a full stop before crossing, not less than two hundred nor more than eight hundred feet from the crossing and shall then cross only when the way is clear and upon a signal from the watchman stationed at the crossing." The evidence discloses that the defendant did not comply with the statute, and by reason thereof the accident occurred. Its train, at the time of collision,